UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Chuck Thomas Considine,

         Petitioner,         Court File No. 13-cv-3225 (ADM/LIB)

  v.

                  **REPORT AND RECOMMENDATION**

Steve Hammer, et al.,

         Respondents.

This matter comes before the undersigned United States Magistrate Judge upon Petitioner Chuck Thomas Considine's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, [Docket No. 1], and Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus, [Docket No. 9]. This case has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For reasons discussed herein, the Court recommends that Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus, [Docket No. 9], be **GRANTED**, and that Petitioner Considine's Petition for a writ of habeas corpus be **DISMISSED with prejudice** as time-barred.

**I.   BACKGROUND AND STATEMENT OF FACTS**

On or about November 22, 2013, Petitioner Chuck Thomas Considine ("Petitioner"), a state prison inmate proceeding *pro se*, filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the present Court, challenging the validity of his Minnesota state court confinement. (Petition [Docket No. 1]).

    **A.   Petition for Writ of Habeas Corpus**

Petitioner challenges an underlying Isanti County District Court conviction and sentence. On March 25, 2010, the Isanti County District Court sentenced Petitioner to 156 months for first

degree criminal sexual conduct, to be served concurrently with 156 months for second degree criminal sexual conduct, to be served concurrently with 1 year for terroristic threats. (Id. at 1). Petitioner claims that he did not enter his plea knowingly or intelligently, in violation of his constitutional rights, because he relied on false information from his attorney(s) regarding his likelihood of success at trial. (Id. at 2-3). Relatedly, Petitioner alleges "numerous" counts of ineffective assistance of trial and appellate counsel, (Id. at 3-5), and prosecutorial misconduct, (Id. at 5-6).

### B.   Timeline of Relevant State Court Proceedings

On March 30, 2010, the Isanti County District Court issued a sentencing order in Petitioner's underlying state court case. (Exhibits in Support of Motion to Dismiss [Docket No. 11-2]). On June 29, 2010, Petitioner filed a Notice of Appeal and commenced his direct appeal of the district court conviction and sentence. (Id.) However, on September 14, 2010, Petitioner filed a Notice of Voluntary Dismissal of his direct appeal. (Id.) Accordingly, on September 15, 2010, the Minnesota Court of Appeals dismissed Petitioner's direct appeal upon Petitioner's notice of voluntary dismissal. (Exhibits in Support of Motion to Dismiss [Docket No. 11-1]). Nothing in the present record before the Court indicates or otherwise suggests that Petitioner applied for further review by the Minnesota Supreme Court.

On November 4, 2010, Petitioner filed his first motion for post-conviction relief with the Isanti County District Court. (Exhibits in Support of Motion to Dismiss [Docket No. 11-2]). The district court dismissed Petitioner's post-conviction petition on February 9, 2011. (Id.) Petitioner moved for review of the district court's denial of post-conviction relief in April 2011; the Minnesota Court of Appeals ultimately affirmed the district court's denial on November 16, 2011. (Id.) The Minnesota Supreme Court denied Petitioner's application for further review on

January 25, 2012. (Id.) The Minnesota Court of Appeals entered its final judgment affirming the decision of the Isanti County District Court denying Petitioner post-conviction relief on January 30, 2012. (See [Docket No. 11-3]).

Petitioner then filed a second post-conviction motion, "to withdraw plea or void judgment," on August 16, 2012.[1] (See [Docket No. 11-2]). The district court denied Petitioner's motion on August 22, 2012. (Id.) Petitioner appealed to the Minnesota Court of Appeals on November 5, 2012, and on November 7, 2012, the Clerk of the Appellate Courts informed Petitioner, via letter, that Petitioner's appeal of his post-conviction motion was deficient for failure to provide an affidavit of service and failure to include two copies of a Statement of the Case, and the letter directed Petitioner to correct the deficiencies within ten (10) days. (See [Docket No. 11-4]). When Petitioner did not correct the noted deficiencies, on November 30, 2012, the Minnesota Court of Appeals entered an order dismissing Petitioner's appeal for failure to correct these deficiencies, writing, "Because appellant has shown no basis for this court to accept jurisdiction, we will dismiss the appeal at this time. As directed below, appellant may remedy his deficiencies and file a motion to reinstate if he provides good cause for an extension [of time to appeal.]" (See [Docket No. 11-5]). The court ordered Petitioner to file and serve a motion to reinstate the appeal with a showing of good cause on or before December 10, 2012.

Petitioner subsequently filed a motion to reinstate his post-conviction appeal; however; Petitioner again failed to provide the Court of Appeals with all necessary filing papers, including failing to provide proof of service of the motion on respondent's counsel and a statement of the

---

[1] In his submissions to the Court, Petitioner claims to have made his second petition for state post-conviction relief on August 12, 2012. In the interest of liberally construing Petitioner's allegations in his favor, as he proceeds *pro se*, the Court uses the August 12 date in making its statute of limitations calculations herein. However, regardless of whether the Court relies on the August 16 official filing date or Petitioner's August 12 date (likely the date that Petitioner prepared rather than filed his second set of post-conviction papers), the Court nevertheless finds that the present Section 2254 Petition is time-barred, for the reasons set forth herein.

3

case. (See [Docket No. 11-6]). On February 1, 2013, the Minnesota Court of Appeals denied Petitioner's first motion to reinstate the appeal but granted Petitioner another opportunity to remedy the defects and provide a statement of good cause for an extension of time to file his appeal. (Id.)

Petitioner filed a second motion to reinstate his appeal, again failing to comply with applicable filing requirements and the Minnesota Court of Appeals February 1, 2013 order. (See [Docket No. 11-7]). The court denied Petitioner's second motion to reinstate his appeal on March 26, 2013. (Id.)

Petitioner filed a motion to reconsider the reinstatement of his appeal on May 10, 2013, with the Minnesota Court of Appeals. (See [Docket No. 11-2]). The Minnesota Court of Appeals denied Petitioner's motion on May 20, 2013, noting that "no petition for rehearing is allowed in this court. Appellant's remedy was to file a petition for review in the [S]upreme [C]ourt." (See [Docket No. 11-8]).

Finally, on July 19, 2013, after Petitioner filed a request for an extension of the deadline by which to petition the Minnesota Supreme Court for review, the Minnesota Supreme Court denied Petitioner's request and effectively denied review of the May 20, 2013 decision by the Minnesota Court of Appeals. (See [Docket No. 11-9]).

## II. RESPONDENTS' MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS, [DOCKET NO. 9]

Pursuant to Rule 5 of the Rules Governing 28 U.S.C. § 2254 Cases, Respondents move the Court for an order dismissing Petitioner Considine's Petition for a writ of habeas corpus with prejudice as the Petition is time-barred by the applicable statute of limitations.

### A. Standard of Review

"The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) instructs federal courts to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782-83 (8th Cir. 2007). Under the AEDPA, a court may not grant relief to a petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a state court decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 413 (2000). An "unreasonable application" of federal law exists when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 408. Federal courts "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411). In reviewing state court decisions, a "federal court also

5

presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

Significantly, the AEDPA establishes a one-year statute of limitations for all Section 2254 habeas actions:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." 28 U.S.C. § 2244(d)(2) (emphasis added).

**B. Petitioner Considine's Petition for a writ of habeas corpus is time-barred.**

As a threshold matter, the Court determines whether Petitioner filed the present Section 2254 action within the statutorily prescribed one-year period. First, the Court determines the date from which the one-year period began to run, as identified in Section 2244(d)(1). Nothing in the

present record before the Court indicates that Petitioner identifies or claims any state-created impediment to filing a Section 2254 action, nor does Petitioner claim any violation of a newly-recognized constitutional right made retroactive to his case on a collateral review.

With respect to Section 2244(d)(1), subsection D, "the date on which the factual predicate of the claim(s) present could have been discovered through the exercise of due diligence," Petitioner seemingly alleges that he did not become aware of the underlying ineffective assistance of his counsel (i.e., the alleged failure of his trial counsel to "turn all the crucial evidence that was in her possession over to [Petitioner's newly appointed trial counsel]" when she removed herself from his case) until February 2011. Petitioner claims that he did not discover that his trial counsel were never in possession of the subject "crucial evidence" until February 7, 2011. (Petition [Docket No. 1], at 8-9). However, nothing in the present record indicates that Petitioner could not have discovered this fact sooner through the exercise of due diligence during subsequent counsel's representation of Petitioner and work on Petitioner's case. Petitioner's pleadings and the present record before the Court indicate that Petitioner was well-aware of the existence of this "crucial evidence" prior to the conclusion of his direct appeal and, thus, entirely capable of discovering whether his subsequent attorneys were aware of the evidence and of discussing the evidence with those attorneys prior to entry of final judgment.

Accordingly, the Court finds no facts in the present record before the Court sufficient to prompt consideration of any date other than the date of final judgment – described in Section 2244(d)(1), subsection A – in assessing whether Petitioner filed the present habeas action within the prescribed one-year statute of limitations.

As articulated above, Section 2244(d)(1), subsection A provides that Petitioner's AEDPA one-year statute of limitations began to run on the date on which his state court judgment became

final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). Petitioner officially concluded direct review of his underlying state court judgment on September 15, 2010, upon the Minnesota Court of Appeals' dismissal of Petitioner's voluntarily abandoned direct review. Accordingly, Petitioner's state court judgment became final and the AEDPA one-year statute of limitations began running on September 15, 2010. See Shepersky v. Wengler, No. 09-cv-2049 (PJS/SRN), 2010 WL 419953, at *3-*4 (D. Minn. Jan. 29, 2010) (holding that the AEDPA one-year statute of limitations began running on the date the Minnesota Court of Appeals issued an order of dismissal in response to the petitioner's notice of voluntary dismissal of his direct appeal). Barring any applicable tolling, Petitioner's one-year statute of limitations was set to expire on September 15, 2011.

However, prior to the expiration of the one-year statute of limitations, Petitioner initiated collateral post-conviction proceedings. Pursuant to Section 2244(d)(2), the period during which Petitioner pursued state post-conviction relief via a properly filed application shall not be counted against the one-year statute of limitations. The statute remains tolled during the entire period of time that such collateral proceedings continue to be pending in any state court, including the state appellate courts. Mills v. Norris, 187 F.3d 881, 883-84 (8th Cir. 1999).

Petitioner "stopped the clock" pursuant to Section 2244(d)(2) when he first initiated state post-conviction proceedings on November 4, 2010. These proceedings concluded upon the Minnesota Court of Appeals' entry of final judgment affirming the decision of the Isanti County District Court denying Petitioner post-conviction relief on January 30, 2012. (See [Docket No. 11-3]). Petitioner's one-year statute of limitations clock was running between September 15, 2010 and November 4, 2010, as the AEDPA one-year statute of limitations is not tolled between the conclusion of a petitioner's direct appeal and his initiation of post-conviction proceedings.

McMullan v. Roper, 599 F.3d 849, 852 (8th Cir. 2010) ("[t]he time between the conclusion of a direct appeal and the filing of a state court application for post-conviction relief does not toll the AEDPA statute of limitations"), cert. denied, 131 S.Ct. 602 (2010). Accordingly, by the Court's calculation, as of November 4, 2010, fifty (50) days of Petitioner's one-year statute of limitations time period had run.

Petitioner's clock began running once again on January 30, 2012. "[T]he one-year statute of limitations under the AEDPA is not tolled for the ninety-day period following final denial of state post-conviction relief, during which a petitioner may seek a writ of certiorari from the United States Supreme Court." Shepersky, 2010 WL 419953, at *4 (citing Snow v. Ault, 238 F.3d 1033, 1035 (8th Cir. 2001), cert. denied, 532 U.S. 998 (2001)); see also Jihad v. Hvass, 267 F.3d 803, 805 (8th Cir. 2001) (holding that the statute of limitations period began to run again on the date the Minnesota Supreme Court denied the petitioner post-conviction relief). Petitioner's clock continued ticking until he filed his second application for state post-conviction relief on August 12, 2012. "Section 2244(d)(2) only stops, but does not reset, the [statute of limitations] clock from ticking and cannot revive a time period that has already expired." Baldwin v. Smith, No. 13-cv-2655 (DSD/LIB), 2014 WL 641514, at *5 (D. Minn. Feb. 19, 2014) (quoting Cordle v. Guarino, 428 F.3d 46, 48, n. 4 (1st Cir. 2005) (citations omitted)). Accordingly, between January 30, 2012 and August 12, 2012, another one hundred and ninety-five (195) additional days of Petitioner's one-year allotment had run, bringing his statute of limitations count to 245 days.

Petitioner's one-year statute of limitations clock next plainly stopped on August 12, 2012, upon initiation of a second post-conviction proceeding and, viewing the record liberally in Petitioner's favor, the clock began running once again at the latest upon the absolute conclusion

9

of Petitioner's second petition for state post-conviction relief on July 19, 2013, namely, the date on which the Minnesota Supreme Court effectively denied review of the May 20, 2013, decision by the Minnesota Court of Appeals denying Petitioner's second request for post-conviction relief. (See [Docket No. 11-9]). Upon the definitive conclusion of Petitioner's state post-conviction proceedings on July 19, 2013, the statute of limitations clock ran until Petitioner filed the present Section 2254 Petition, dated November 20, 2013. Between July 19, 2013 and November 20, 2013, Petitioner lost another 124 days against his one-year period, bringing his total count to 369 days.

Therefore, accounting for the non-tolled period between the conclusion of Petitioner's direct appeal and the filing of his first state court application for post-conviction relief (50 days), the non-tolled period between the conclusion of his first state court application for post-conviction relief and the filing of his second application for post-conviction relief (194 days), and the non-tolled period between the conclusion of his second state court application for post-conviction relief and the filing of the present habeas Petition (124 days), Petitioner filed the present Section 2254 Petition beyond the prescribed one-year period. Because 369 days ran prior to November 20, 2013, the date of the present habeas Petition, the AEDPA one-year statute of limitations expired prior to the date Petitioner filed the present action.

Accordingly, the Court recommends dismissing the present Petition with prejudice as it is time-barred.

Moreover, beyond the foregoing exceedingly liberal 369-day calculation, the Court finds that the calculation is actually augmented by the fact that Petitioner's second post-conviction petition and the appeal(s) thereof did not constitute "properly filed" applications for post-

conviction relief and, as a result, not all of the time during which Petitioner's second post-conviction state proceedings were pending actually tolled the statute of limitations.

Section 2244(d)(2) provides that the AEDPA one-year statute of limitations is only tolled during the pendency of a properly filed application for state post-conviction or other collateral review. 28 U.S.C. § 2244(d)(2).

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. And an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, or on all filers generally. But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar.

Artuz v. Bennett, 531 U.S. 4, 8-9 (2000) (internal citations omitted). Artuz distinguishes between claims being properly presented or raised and an application for relief being properly filed. Id. at 10.

As discussed in Section I.B, supra, on November 30, 2012, citing violations of Rule 133.03 of the Minnesota Rules of Civil Appellate Procedure, the Minnesota Court of Appeals determined that Petitioner had not complied with applicable filing requirements when appealing the district court's denial of his second post-conviction petition. (See [Docket No. 11-5]). In its November 30, 2012, Order, the Minnesota Court of Appeals determined that Petitioner's appeal of the district court's decision regarding his second post-conviction petition was not filed in compliance with Rule 133.03, was untimely, and ultimately failed to demonstrate any basis for

the Court of Appeals to "accept jurisdiction" of the appeal, and the court ultimately dismissed Petitioner's appeal without reaching its merits. (Id.)

Although the Minnesota Court of Appeals' November 30, 2012, decision allowed Petitioner the opportunity to move to reinstate his appeal upon a showing of good cause and compliance with all applicable filing requirements, Petitioner never properly reinstated the appeal. Beginning on November 30, 2012, Petitioner no longer had a properly filed petition for post-conviction relief filed with any state court.

In Nelson v. Norris, 618 F.3d 886, 892 (8th Cir. 2010), the Eighth Circuit recognized that similarly improperly filed petitions for post-conviction relief in fact do not toll the AEDPA statute of limitations. In Nelson, a habeas action, petitioner Nelson had filed a petition for post-conviction relief with the state trial court in the underlying action. Id. at 888. However, Nelson neglected to sign and verify the petition, and the Arkansas Supreme court declined to reach the merits of Nelson's petition because the petition was not properly verified, in violation of applicable procedural rules. Id. The Eighth Circuit held that Nelson's post-conviction proceedings did not toll the AEDPA one-year statute of limitations as his failure to verify his post-conviction petition rendered his post-conviction proceedings improperly filed. Id. at 892.

As in Nelson, the Minnesota Court of Appeals found that Petitioner in the present case never properly filed an appeal of the district court's denial of his second petition for post-conviction relief, and the Court of Appeals declined to reach the merits of Petitioner's appeal for this reason. "[I]f a state court finds that a motion fails to comply with filing requirements, that motion is not 'properly filed,' regardless of whether those filing requirements are firmly established and regularly followed." Id. Even if one takes into account the 30-day window in which Petitioner might have appealed the Minnesota Court of Appeals' November 30, 2012,

decision to the Minnesota Supreme Court, Petitioner no longer had a properly filed post-conviction petition before any state court as of December 30, 2012. Baldwin, 2014 WL 641514, at *3 ("The deadline for seeking further review in the Minnesota Supreme Court expires 30 days after the Court of Appeals' decision is handed down." (citing Minn. R. App. P. 117, subd. 1)). Accordingly, the Court finds that the time period between December 30, 2012 and Petitioner's filing of the present Petition actually would not be tolled pursuant to Section 2244(d)(2), adding an additional 191 days to Petitioner's statute of limitations count; therefore, 560 non-tolled days passed between the entry of final judgment in Petitioner's underlying state court action and the date on which Petitioner filed the present Section 2254 action. The present habeas Petition is thus definitively time-barred.

Finally, the Court finds no reason as to why any non-tolled time period should be equitably tolled. Courts equitably toll only "when extraordinary circumstances beyond a prisoner's control make it impossible to file a [habeas corpus] petition on time . . . [or] when conduct of the defendant has lulled the plaintiff into inaction." Jihad, 267 F.3d at 805. "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Nelson, 618 F.3d at 892-93 (citations omitted). Petitioner has demonstrated neither.

### C. Certificate of Appealability

A Section 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability, ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a

showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, could decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy or worrisome about this case that warrants further appellate review. It is therefore recommended that Petitioner not be granted a COA in this matter. See, e.g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED:**

1. That Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus, [Docket No. 9], be **GRANTED**; and

2. That the Petition for a writ of habeas corpus be **DISMISSED with prejudice.**


Dated: August 6, 2014                                    **s/ Leo I. Brisbois**
                                                          Leo I. Brisbois
                                                          U.S. MAGISTRATE JUDGE


**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by August 20, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by September 3, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the

Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.